IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Albert D. Page, #298953, ) | |
| ) | CIVIL ACTION NO. 9:08-1660-RMG-BM |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| A. J. Padula, Warden; Robert Ward, ) | |
| Directional Divisional Operations; ) | **REPORT AND RECOMMENDATION** |
| John Brooks, Associate Warden; ) | |
| Jennifer Livingston, Correctional Officer; ) | |
| Jon Ozmint, Director; Ron Cribb, Captain; ) | |
| Genna Cain, Officer and Ms. Simon, ) | |
| mailroom personnel at LCI, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983.

Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations

of his constitutional rights by the named Defendants.[1]

After a considerable pretrial litigation history, the Defendants filed a motion for

summary judgment pursuant to Rule 56, Fed.R.Civ.P. on April 5, 2010. As the Plaintiff is

proceeding pro se, a Roseboro order was entered by the Court on April l2, 2010, advising the pro se

---

[1]Plaintiff is a frequent filer of litigation in this Court. Aloe Creme Laboratories, Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970)[A federal court may take judicial notice of the contents of its own records].
- 1 -



Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case.

On May 7, 2010, Plaintiff filed a motion for an extension of time to respond to the motion for summary judgment, and then filed a second motion for an extension of time on May 13, 2010. Plaintiff's motions were granted on May 24, 2010, and Plaintiff was given until June 17, 2010 to file his response. However, on June 15, 2010, Plaintiff filed another motion for an extension of time, which was granted on July 23, 2010. Plaintiff's new response date was August 5, 2010. Plaintiff did not, however, file a memorandum in opposition by that date, and on August 13, 2010 (in consideration of Plaintiff's pro se status), an Order was issued giving Plaintiff another ten days in which to file his response. Plaintiff was further advised in that Order that if he failed to file a response, his case would be recommended for dismissal for failure to prosecute.

Plaintiff thereafter filed yet another motion for an extension of time to respond on August 23, 2010 . Plaintiff's motion was again granted, and he was given until October 1, 2010 to file his response. However, on October 1, 2010, Plaintiff filed yet another motion for an extension of time, which was again granted, giving Plaintiff until Friday, October 22, 2010, to file his response to the Defendants' motion for summary judgment, which by that time would have been pending for over six months. That deadline has now also expired, with Plaintiff again having failed to file any response to the Defendants' motion, which is now before the Court for disposition.[2]

---

[2] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



## Background and Evidence

Plaintiff alleges in his verified complaint[3] that on February 21, 2008 he was confined in the Special Management Unit (SMU) at the Lee Correctional Institution (LCI). Plaintiff alleges that, pursuant to departmental policy, SMU inmates who wish to access legal materials are required to fill out a "Form 9-1 Lawbook Request", which allows inmates to request up to three law books or SCDC Policy/Procedures, and that these legal materials are thereafter to be provided within three working days. Plaintiff further alleges that, pursuant to prison policy, requested legal material is to be delivered within one working day if the inmate can demonstrate a pending court deadline. Plaintiff alleges that this practice, known as the "bookmobile system", is unconstitutional, and that in any event the Defendants do not even adhere to the stated policy.

Plaintiff alleges that on February 23, 2008 he sent legal documents to the Defendant Livingston demonstrating a court deadline as required, but that he did not receive his requested material until February 28, 2008. Plaintiff further alleges that he currently (as of the time of the filing of his complaint) had three cases in the state Administrative Law Court (ALC) and three cases pending in U. S. District Court, and that according to prison policy he should be afforded fifteen books per week. However, Plaintiff alleges that he currently receives only six to nine books per month. Plaintiff alleges that he has complained to the Defendants Padula, Ward and Brooks about

---

[3] The docket reflects that Plaintiff filed his original complaint on April 21, 2008, and thereafter filed amended complaints on July 2, 2008 and again on September 2, 2008. While Plaintiff's original complaint was verified, his two amendments are not. In this Circuit, verified complaints by pro se litigants are to be considered as affidavits when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Since Plaintiff's original Complaint is verified, even though Plaintiff has not filed a response to the motion for summary judgment, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

- 3 -



this situation, to no avail, and that the actions of the Defendants are depriving him of meaningful access to the courts.

Plaintiff also complains that the prison policy dealing with photocopies is "vague, broad, and ambiguous", as well as being "burdensome and costly". Plaintiff specifically complains about having to copy his briefs by hand, which discourages prisoners from seeking redress in the courts. Plaintiff complains that the "law clerks" have no formal training and cannot answer basic legal questions, and that his access to the Nexis-Lexis computer program is too limited (Plaintiff complains that he has only been able to use this system twice in response to eight to ten requests). Plaintiff alleges the Defendant Cribb controls who uses the legal computer, while the Defendant Cain is responsible for distribution of legal supplies. Plaintiff alleges that in addition to being denied access to photocopies, he is denied access to envelopes and paper. Plaintiff seeks declaratory and/or injunctive relief. See generally, Plaintiff's Verified Complaint.

In his first supplement to his complaint Plaintiff reiterates his allegations, asserts that in addition to a constitutional violation he is challenging the validity of the SCDC polices at issue, and notes that Correctional Officer Carolyn Cain is also a Defendant in the case.[4] In his second supplemental pleading, Plaintiff added a "Ms. Simon and Ms. Whitney" (mailroom personnel) as party Defendants. See generally, Plaintiff's two Supplemental Complaints.

In support of summary judgment in the case, the Defendant Jennifer Livingston has submitted an affidavit wherein she attests that she is the Library Coordinator at LCI, and that she oversees the legal library and the general library according to SCDC Policy GA-01.03 [Inmate access

---

[4]Plaintiff also indicates that there are other inmates who wish to join his lawsuit. However, those inmates have submitted no signed complaints, and have therefore not been added as party Plaintiffs in this case.



to the Courts], a copy of which is attached to her affidavit as Exhibit A. Livingston attests that law clerks are inmates hired by the legal library to assist other inmates in finding case law or statutes related to their legal problems, and as such do not provide legal advice to inmates. Livingston attests that an inmate may be chosen to become a law clerk if they are able to demonstrate a general knowledge of the law during their application procedure, and that once hired are given hands on training in legal research by the institutional librarian and are provided with the "How to Use the Law Library" reference packet. Livingston attests that there are currently two law clerks who work in the legal library, and an additional four law clerks specifically for assisting SMU inmates. Livingston attests that law clerks work Monday through Friday, with the SMU allowing law clerks to regularly enter and assist inmates on Tuesdays and Thursdays.[5] Livingston further attests that law clerks may also be allowed to enter the SMU to assist inmates on Mondays, Wednesdays and Fridays if an inmate has shown an immediate need for materials due to a court deadline and if SMU security allows entry.

Livingston attests that in order to request legal reference books and materials, inmates in the SMU must complete Form 9-2 and request a particular case, statute or other document, with only those types of reference materials listed in Section 2.1 of SCDC Policy GA-01.03 being provided to inmates. Inmates submit completed 9-2 forms with their out going mail, with the mail room then directing these forms to her office at some point thereafter, usually within three days. Livingston attests that, pursuant to Section 9 of SCDC Policy GA-01.03, requested materials are delivered to inmates within three working days of when they are received, excluding holidays and weekends. Further, if an inmate submits proof of a pending court deadline within thirty days, he is

---

[5]The SMU is a maximum security unit.



entitled to receive his requested materials on the weekday immediately after his request is received.

Livingston attests that library staff fulfils inmate requests by photocopying the statute, case or document and providing it to the inmate for review and hand copying if the inmate so chooses. Livingston attests that this is procedure pursuant to Paragraph 9.8 of SCDC Policy No. GA-01.03, and is designed to prevent legal books and materials from being damaged by inmates, as well as to ensure that the actual law books are accessible to all inmates at all times. Livingston attests that library staff will note on the original request form the date that the inmate is given their materials, and that the copy is in new or good condition. Further, if a document requested is too lengthy to photocopy, the inmate will be provided with the actual book containing the document. Inmates who are not housed in the SMU are allowed to enter the legal library during the time assigned to their dormitory, with the length of access time varying among dorms due to security and other concerns. Livingston attests that the legal library has a capacity for twelve inmates, although additional inmates may be allowed access to legal library sources through the general library if they have pending court deadlines.

Livingston attests that the Plaintiff has been transferred from LCI, but that when last at LCI, he was housed in the Chesterfield North Unit, which may access the legal library on Mondays between 8:30 a.m. and 11:20 a.m. Further, once an inmate's deadline for a legal document becomes within thirty days, they are allowed to access the law library during their assigned block of time, in addition to every period of time that the other dormitories on their yard have access. For Plaintiff, proof of a legal deadline would have allowed him access Mondays between 8:30 and 11:20, and between 12:20 and 4:40; Tuesdays between 8:30 and 11:20 , and between 12:20 and 3:00; and Fridays between 8:30 and 9:50, and between 12:20 and 2:00.



Livingston attests that, as Library Coordinator, she is responsible for providing inmates with photocopies, with Paragraph 12 of SCDC Policy No. GA-01.03 allowing inmates to request photocopies of legal materials and documents to support a pleading. However, this policy does not allow inmates to photocopy inmate generated documents; rather, inmates must make these copies by hand. Livingston attests that the photocopying policy was developed in order to balance an inmate's need for photocopying with expense to the Department. Photocopies allowed under the policy are typically given to an inmate in the SMU on the Tuesday or Thursday after the request has been received, although if an inmate can show proof of a pending court deadline within thirty days, they may receive their photocopies on the weekday immediately after the request is received. Any time an inmate provides library staff with proof of a court deadline, that document is returned to the inmate - the library does not make copies of these documents for its files.

Livingston attests that, as Library Coordinator, she updated the LexisNexis program on the four computers in the law library, and provided SMU staff with the program necessary to update the computer in the SMU. Livingston attests that computers needed to be updated about every six months, and provided access to various federal and state court cases, statutes, and other materials. However, this computer program was offered at LCI on a trial basis, and was discontinued as of April 2009. Livingston attests that she was also not responsible for overseeing or scheduling inmate access to the SMU computer for use of the LexisNexis program.

Livingston attests that she and her staff are not allowed to enter the SMU without consent of the unit, and that occasionally a security issue in the SMU may prevent her or her staff from entering and assisting inmates or delivering materials. Nevertheless, she and her staff make ever effort to deliver requested legal reference material to inmates in the SMU within the time frame



stated in Paragraph 9 of SCDC Policy No. GA-10.03. Livingston attests that she has reviewed the requests submitted by the Plaintiff since approximately 2008 while he was housed at LCI, and that at no time did she deny Plaintiff any type of legal materials that he was entitled to receive pursuant to policy, nor has she intentionally delayed Plaintiff's receipt of these materials. See generally, Livingston Affidavit, with attached exhibit.

The Defendant John Brooks has also provided an affidavit wherein he attests that he is the Associate Warden for Program Services at LCI, and that if an inmate has a complaint regarding library service and writes to him or Livingston, they will discuss the situation and attempt to fix the problem. An inmate may also file a grievance if unsatisfied with the resolution. Brooks attests that the mailroom at LCI has two full time employees, with inmates not being allowed to work in the mailroom due to security and privacy reasons. Brooks attests that occasionally his administrative assistant will assist in the mailroom if extra help is needed. The mailroom is open Monday through Friday between 8 a.m. and 4 p.m., and SMU inmates receive mail in their cells during this time. Finally, Brooks attests that Plaintiff is now incarcerated at the Evans Correctional Institution, and is no longer incarcerated at LCI. See generally, Brooks Affidavit.

The Defendant Sandra Simon has submitted an affidavit wherein she attests that she is the Postal Center Director at LCI. Simon attests that the mailroom is run by two staff members, herself and another, although occasionally Brooks' Administrative Assistant will assist in the mailroom if help is needed. Simon attests that the Legal/Privileged/Certified Mail Delivery Log, SCDC Form 10-12, is kept by her office for all mail of this type that comes into the facility for inmates and employees, and that when this type of mail is received, an employee in the office will document on the log the addressee's name and the sender information. The recipient then signs off



on the log when they receive the piece of mail. Further, inmates in general population receive their general mail in their cells daily, Monday through Friday, while Legal/Privileged/Certified Mail must be physically picked up with a log stating that the inmate received that mail. With respect to the SMU, these inmates receive general and legal mail in their cells daily, Monday through Friday, while Legal/Privileged/Certified Mail is delivered by a correctional officer, which is opened in front of the inmate at their cell to check for contraband. The officer and the inmate then both sign the log acknowledging the inmate's receipt of the mail. See generally, Simon Affidavit.

The Defendant Ronnie Cribb has submitted an affidavit wherein he attests that he is a Captain in the SMU at LCI. Cribb attests that in early 2008 a computer with Lexis/Nexis access was installed in the SMU to assist inmates with legal research, and that as SMU Captain he developed a policy for use of the computer which was distributed to all SMU inmates. Cribb attests, however, that this computer based legal research was a pilot program that is no longer in effect. Cribb attests that, while in effect, to access the computer an inmate was required to send him a request along with proof that they had a court deadline within forty-five days, with such request having to be submitted at least seventy-two hours in advance of when the inmate wished to use the computer. Cribb attests that he received these requests Monday through Friday, and that the requests could be denied if an inmate did not show a court deadline or if the inmate's behavior created heightened security concerns.

Cribb attests that, once approved, a time was scheduled for the inmate on a first come first serve basis, with inmates only being allowed access to the computer between 10 a.m. and 12 p.m. on Monday, Wednesday and Friday. Each inmate was scheduled for computer use in one hour blocks, thereby allowing six inmates to use the compute each week. Cribb attest that the limited



availability for computer use was based on security concerns, as it was located inside an empty room in the administration area of the unit. Cribb attests that the security procedure for bringing an inmate from his cell to the legal computer required that two security officers perform a search of the inmate, his cell, and possibly his cellmate, and security for transportation to the room and back. Cribb attests that he does not recall any inmate complaints about computer access, and specifically does not recall the Plaintiff complaining about computer access verbally, through a Request to Staff, or through grievances.

With respect to law library access, inmates in the SMU did not have access to the law library for security reasons. Rather, SMU inmates were required to fill out a form requesting legal and writing materials, which were then placed on the mail cart for distribution. Cribb attests that SMU officers do not handle outgoing inmate mail, and that on weekdays an SMU officer brings a locked box to all inmate cells for each inmate to deposit their outgoing mail. This box is later picked up by mailroom staff. Incoming mail is delivered by mailroom staff to the SMU control room, where the mail is then sorted and delivered to inmates on the same day. See generally, Cribb Affidavit.

Finally, the Defendant Gena Cain-Davis has submitted an affidavit wherein she attests that she was an Administrative Assistant in the SMU at LCI, although she no longer works for the SCDC effective March 10, 2010. Davis attests that her job responsibilities included responding to inmate requests for legal and correspondence materials, assisting with security, as well as assisting inmates in receiving services such as medical visits, canteen and food services. Davis attests that on the first of each month all inmates receive sixteen pieces of paper, one pen and four envelopes (although this has been decreased to two envelopes as of November), and that if an inmate had more than $6.43 in their prison account, they would be allowed to purchase additional correspondence



supplies. Further, if an inmate did not have money in their account but could provide proof of a pending court case requiring a specific document, they could request additional legal correspondence material to use in drafting this document. If an inmate received the requested materials and later discovered they required more materials, they could receive more materials upon showing a need. Davis attests that there was no limit as to the amount of supplies an inmate may receive for drafting a document as long as a need for supplies was shown.

Davis attests that materials were properly requested by completion and submission of Form 10-14. Inmates would then be debited the cost for the correspondence materials at a maximum cost of ninety cents per thirty pages. If an inmate requested materials for a legal case, they would be required to submit proof of the pending case with the form. Inmates would not be given additional materials for the same court case multiple times unless they could show the need for more supplies. Davis attests that the Plaintiff requested additional supplies for drafting legal documents on numerous occasions, with his requests occasionally being denied due to failure to provide proof of a pending court case deadline or failure to show that additional materials were necessary for completion of a document. Davis attests that inmates were not given unlimited access to paper in order to conserve resources as well as to prevent inmates from using paper for unauthorized purposes, such as clogging toilets and covering windows. Inmates were also not allowed to hoard paper and supplies, although inmates who had a need for paper and other supplies to prepare legal documents were not deprived of those supplies. See generally, Davis Affidavit.

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no



genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes that the Defendants are entitled to summary judgment in this case.

First, to the extent Plaintiff has amended his complaint to assert, separate and apart from his constitutional claim, a claim that the Defendants are violating their own policies and procedures, that is not a claim that can be maintained in a § 1983 action. Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C. 1992) [violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983]); see also Scott v. Hamidullah, No. 05-3027, 2007 WL 904803 *5 n.6 (D.S.C. Mar. 21, 2007) (citing Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)); Johnson v. S.C. Dep't of Corrections, No. 06-2062, 2007 WL 904826 at *12 (D.S.C. Mar. 21, 2007) ["Plaintiff's allegation that Defendants did not follow their own policies fails, as the failure of prison officials to follow their own policies or procedures, standing alone, does not amount to a constitutional violation."] (citing Riccio, 907 F.2d at 1469 [if state law grants more



procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue]). Therefore, while Plaintiff may have some state law claim, or some further administrative procedure he could pursue, with respect to such an allegation, to the extent he has intended to assert any such claim in this § 1983 case, it must be dismissed.

Second, Plaintiff has only requested injunctive and/or declaratory relief in this case. However, since Plaintiff is no longer incarcerated at the Lee Correctional Institution, his request for only declaratory and/or injunctive relief renders his claims moot. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) ["[T]he transfer of a prisoner render[s] moot his claim for injunctive and declaratory relief."]; Taylors v. Rogers, 781 F.2d 1047, 1048 n. 1 (4th Cir. 1986) [holding that prisoner's transfer mooted a request for declaratory and injunctive relief]. Cf. Powell v. McCormack, 395 U.S. 486, 496 (1969) ["[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."]; Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987); Buie v. Jones, 717 F.2d 925, 927-929 (4th Cir. 1983); Weinstein v. Bradford, 423 U.S. 147, 149 (1975). Therefore, as the relief Plaintiff seeks in this claim is moot, this case is subject to dismissal.

Finally, even if Plaintiff had requested monetary damages, which might otherwise have maintained the viability of his claim; see Ciarpaglini v. Saini, 352 F.3d 328, 330 (7th Cir. 2003) [finding that transfer to another jail did not moot damages claim for a suit filed pursuant to § 1915(g)]; Mawhinney v. Henderson, 542 F.2d 1, 2 (2d Cir. 1976); the verified allegations of his complaint, standing alone[6], fail to set forth a violation of his constitutional rights. In order to pursue

---

[6] As noted, Plaintiff failed to respond to the motion for summary judgment, and has submitted
(continued...)



his claim for denial of access to the Courts and avoid summary judgment, Plaintiff must present evidence sufficient to create a genuine issue of fact that he was both denied access to the courts, and suffered some actual injury or specific harm as a result. Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987) ["Courts have required a showing by a complaining prisoner of actual injury or specific harm to him before a claim of lack of access to the courts will be sustained"]; Hause v. Vaught, 993 F.2d 1079, 1084-1085 (4th Cir. 1993).

With respect to the first of these requirements, Plaintiff has not presented any evidence (indeed, he did not respond to the motion for summary judgment) to show that he was denied access to the courts, other than the general and conclusory allegations set forth in his complaint. Plaintiff cannot simply allege in a conclusory fashion that he was denied adequate access to the courts, provide no supporting evidence, and expect to survive summary judgment. Papasan v. Allain, 478 U.S. 265, 286 (1986) [Courts need not assume the truth of legal conclusions couched as factual allegations]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]. Further, even if the Court assumed for purposes of summary judgment that the allegations of Plaintiff's verified complaint are sufficient to at least create a genuine issue of fact as to whether Plaintiff was denied access to the Courts, he has failed to present any facts or evidence to show that he has suffered any actual injury or harm as a result. see Lewis v. Casey, 518 U.S. 343,

---

⁶(...continued)
no other evidence in support of his claim.



349-353 (1996)[Inmate alleging denial of access to the courts must be able to demonstrate "actual injury" caused by the policy or procedure at issue].  Plaintiff fails to cite to any specific harm he suffered in any specific case as a result of the alleged conduct of the Defendants.

Therefore, even if Plaintiff had sought monetary damages (which he has not), this case would be subject to dismissal.  <u>Magee</u>, 810 F.2d at 452 ["Courts have required a showing by a complaining prisoner of actual injury or specific harm to him before a claim of lack of access to the courts will be sustained"].

**Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed.**

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

November 1, 2010

Charleston, South Carolina



- 15 -

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

